UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANA BENTZ, Individually and as Executor of the Estate of ARTHUR MONDELLA, Deceased, DOMINIQUE MONDELLA, individually,<br><br>       Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, and JOHN DOE LAW ENFORCEMENT OFFICERS 1-100,<br><br>       Defendants. | Claim No, _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiffs by and through their undersigned counsel, Richard A. Luthmann, Esq. of the Luthmann Law Firm, PLLC, as and for his Complaint in the action against Defendants, hereby allege as follows:

## NATURE OF THE ACTION

1. This is a civil action seeking monetary relief (including past and ongoing economic loss) compensatory, special damages, punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights, brought pursuant to 42 *U.S.C.* §1983 and §1985, and an award of attorney's fees/costs pursuant to 42 *U.S.C.* §1988.

2. ARTHUR MONDELLA, the owner of DELL'S MARASCHINO CHERRIES, died while he was in the custody of law enforcement during an illegal, "guns blazing", "COWBOY", "CAVALIER" raid by several law enforcement agencies including the NEW YORK CITY POLICE DEPARTMENT, THE OFFICE OF THE DISTRICT ATTORNEY OF KINGS COUNTY and THE NEW YORK STATE DEPARTMENT OF

ENVIRONMENTAL CONSERVATION DIVISION OF LAW ENFORCEMENT. The NYPD came along to enforce an <u>environmental warrant</u> that usually requires two NYS DEC enforcement officers to go to the premises during normal business hours. And the NYPD came heavy – with enough firepower that it would appear to the casual observer that they were there to take out Pablo Escobar, El Chapo and Osama Bin Laden – ALL AT ONCE. <u>When the cops choose to play "Cowboys and Indians", the NYPD must he held responsible when the Indians are needlessly killed.</u>

3. The raid was illegal and unconstitutional because it was not supported by probable cause and was based on incorrect and/or incomplete information relating to an environmental warrant – a pretextual basis to spring a coordinated joint law enforcement agency raid on the DELL'S MARASCHINO CHERRIES facility located at located at 81-97 Ferris Street, Brooklyn, New York.

4. Compounding the illegal and unconstitutional raid by joint law enforcement agencies was the abject wanton, reckless, grossly negligent and/or negligent manner in which the illegal and unconstitutional raid was conducted. The joint law enforcement raid failed to "clear" the room where ARTHUR MONDELLA was seized and as a result of this failure, ARTHUR MONDELLA reached for a legal concealed weapon and killed himself by a self-inflicted gunshot wound.

5. The joint law enforcement agencies, either knew or should have known that the decedent was in possession of a license to carry a concealed firearm, as the decedent, ARTHUR MONDELLA, had multiple firearms legally registered in his name. But for the outrageous and abject wanton, reckless, grossly negligent and/or negligent actions and/or omissions of law enforcement, ARTHUR MONDELLA would not have

been killed as the result of an illegal and unconstitutional raid of joint law enforcement agencies.

6. This action seeks redress and compensation for ARTHUR MONDELLA's Estate and for the daughters that ARTHUR MONDELLA left behind because of the failures of law enforcement on that fateful February night.

## JURISDICTION

7. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

8. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

9. The Plaintiffs filed a timely Notice of Claim with the Comptroller of THE CITY OF NEW YORK (Claim PI016933).

10. To date, no answer has been received by Plaintiffs and no compensation has been offered by Defendant CITY OF NEW YORK.

11. This action has been commenced less than ONE YEAR AND NINETY DAYS form the date of the occurrence, to wit: February 23, 2015.

## PARTIES

12. Plaintiff, DANA BENTZ was and at all times material herein a resident of the County of Richmond, City and State of New York.

13. Plaintiff, DOMINIQUE MONDELLA was and at all times material herein a resident of the County of Richmond, City and State of New York.

14. During all times relevant in this Complaint, Defendant THE CITY OF NEW YORK (hereinafter referred to as the "CITY") is a duly constituted Municipal Corporation of the State of New York. Upon information and belief the CITY oversees, maintains, manages/supervises, and controls several departments and employees – including but not limited to the New York City Police Department and the Office of the District Attorney of Kings County.

15. During all times relevant in this Complaint, Defendant THE NEW YORK CITY POLICE DEPARTMENT (hereinafter referred to as "NYPD") is a duly constituted Municipal Corporation of the State of New York. Upon information and belief the NYPD oversees, maintains, manages/supervises, and controls several departments and employees – including but not limited to those within the New York City Police Department.

16. During all times relevant in this Complaint, JOHN DOE LAW ENFORCEMENT OFFICERS 1-100 are individual and as of yet unidentified law enforcement officers of the defendants THE CITY OF NEW YORK and/or THE NEW YORK CITY POLICE DEPARTMENT whose identities shall be sought in discovery.

17. During all times relevant in this Complaint, THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, and JOHN DOE LAW ENFORCEMENT OFFICERS 1-100 are collectively referred to as the "Defendants".

18. At all relevant times, the Defendants worked in concert with law enforcement officers from THE STATE OF NEW YORK ("NYS"), THE OFFICE OF THE DISTRICT ATTORNEY OF KINGS COUNTY ("KINGS DA"), and THE NEW YORK

STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION DIVISION OF LAW ENFORCEMENT ("NYS DEC").

## FIRST CLAIM ON BEHALF OF ALL PLAINTIFFS

## Violation of 42 U.S.C. § 1983

19. The Plaintiffs repeat, reiterate and reallege each and every paragraph above as if fully stated herein and further state as follows.

20. The conduct of Defendants, as described herein, directly led to the death of the decedent by self-inflicted gunshot wound.

21. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

22. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the Defendants, individually and severally.

23. On or before February 24, 2015, Defendants, jointly and/or severally improperly obtained a search warrant for the now-deceased ARTHUR MONDELLA's business, Dell's Maraschino Cherries Co., Inc., located at 81-97 Ferris Street, Brooklyn, New York.

24. The aforementioned warrant was obtained by the Defendants without sufficient independent verification, without veracity, without the requisite knowledge, without corroboration from any reliable source, under false pretenses, based upon the affidavit of an environmental conservation engineer in order to conduct a search of the

business relative to the "monitoring and treatment" of wastewater discharge into the New York City Sewer System.

25. The aforementioned warrant was a ruse, a mechanism by which investigators from the Defendants and KINGS DA could effectuate an improper and impermissible search for a drug manufacturing and distribution plant.

26. The aforementioned warrant was not supported by probable cause.

27. Neither the Defendants nor the KINGS DA possessed information, evidence or probable cause to obtain a proper search warrant for illegal drugs.

28. The Defendants and KINGS DA therefore improperly, unlawfully and under false pretenses obtained the environmental search warrant.

29. The Defendants and KINGS DA presented the warrant to a Justice who was not provided with correct and complete factual information and therefore could not make a qualitative or quantitative analysis of information because the information was presented was calculated toward a completely different and undisclosed goal.

30. The Defendants and KINGS DA did not possess sufficient evidence to obtain an environmental warrant.

31. By virtue of the fact that the environmental warrant was sought for and obtained when in the reality the real goal of the investigation was to uncover illegal drugs, drug manufacturing equipment and/or distribution plant, the Defendants and KINGS DA have essentially admitted and conceded that there was not sufficient evidence which would have supported a search warrant for illegal drugs, drug manufacturing equipment and/or distribution plant.

32. Despite months and perhaps years of investigations, suspicion and attempts at gathering evidence, none was presented to any New York State Supreme Court Justice in an attempt to secure a proper search warrant for illegal drugs, drug manufacturing equipment and/or distribution plant, because whatever evidence that actually existed, was concededly insufficient to support such an application.

33. On or about February 23, 2015, KINGS DA and the NYS DEC, presented an Affidavit to the Honorable Miriam Cyrulnik, Justice of the Supreme Court, Kings County, knowing full well that their true aim .was not to search for environmental violations, and the Defendants had knowledge of this fact.

34. On or about February 23, 2015, KINGS DA and the NYS DEC fraudulently approached the Honorable Miriam Cyrulnik, Justice of the Supreme Court, Kings County and did not disclose the true nature of the investigation and committed blatant fraud on the Court, and the Defendants had knowledge of this fact.

35. The presentation of the aforementioned warrant application was fraudulent, not based on accurate facts and/or information and was not reasonably calculated to achieve its stated goal.

36. That at no time did any member of the KINGS DA and/or the NYS DEC ever inform Judge Cyrulnik of their true intentions, and the Defendants had knowledge of this fact.

37. That at no time did any member of the KINGS DA and/or the NYS DEC ever inform Judge Cyrulnik that they had been conducting an investigation regarding illegal drug activity and that they did not have sufficient evidence to support an

application for a search warrant for same, and the Defendants had knowledge of this fact.

38. That at no time did members of the KINGS DA inform the NYS DEC of their true purpose in securing the search warrant, and the Defendants had knowledge of this fact.

39. That in the event the KINGS DA *did inform* the NYS DEC of their true purpose, they would have had to disclose this prior to obtaining a warrant under an environmental guise, and the Defendants had knowledge of this fact.

40. That on or about February 24, 2015 during the execution of the aforementioned improperly obtained warrant, the warrant execution team, including members of the Defendants, KINGS DA and the NYS DEC exceeded their authority by moving, touching, searching, altering and/or removing fixtures, furniture, shelving at the location for the explicit yet surreptitious purpose of searching for illegal drugs, drug manufacturing equipment and/or distribution plant, such purpose not being authorized by the search warrant.

41. That prior to and during the execution of the search warrant, members of the search warrant execution team, including employees of the Defendants, KINGS DA and NYS DEC, either knew or should have known that the decedent was in possession of a license to carry a concealed firearm, as decedent has multiple firearms legally registered in his name.

42. That during the course of the investigation into the alleged illegal drugs, drug manufacturing equipment and/or distribution plant that was the basis of the fraudulent warrant, the Defendants has access to the information about the decedent's

license to carry a concealed weapon and the multiple firearms legally registered in his name.

43. That on or about February 24, 2015 in the course of an execution of the aforementioned improperly obtained warrant, the warrant execution team, including members of the Defendants, KINGS DA and the NYS DEC were reasonably expected to secure any individuals at the site for the protection of themselves and others at the location.

44. That on or about February 24, 2015 in the course of an execution of the aforementioned improperly obtained warrant, the warrant execution team, including members of the Defendants, KINGS DA and the NYS DEC were negligent, reckless and careless in failing to conduct a routine pre-execution search based on said information about the firearms.

45. That on or about February 24, 2015 in the course of an execution of the aforementioned improperly obtained warrant, the warrant execution team, including members of the Defendants, KINGS DA and the NYS DEC, their employees, agents and/or members should have known that the execution of any search warrant must be conducted in a manner so as to reduce and/or eliminate, if possible, the threat of physical violence and/or bodily harm to any members of the warrant execution team, members of the public, non-involved employees of the decedent's business and the decedent himself.

46. That on or about February 24, 2015 in the course of an execution of the aforementioned improperly obtained warrant, the warrant execution team, including members of the Defendants, KINGS DA and the NYS DEC, their employees, agents

and/or members should have known that any individual who is the subject of a search and/or seizure is likely to react in a violent or aggressive manner.

47. That on or about February 24, 2015 in the course of an execution of the aforementioned improperly obtained warrant, the warrant execution team, including members of the Defendants, KINGS DA and the NYS DEC, their employees, agents and/or members should have known that any individual who is the subject of any investigation and more particularly the subject of the actual search warrant of any sort, must be disarmed prior to effectuating any search.

48. That on or about February 24, 2015 in the course of an execution of the aforementioned improperly obtained warrant, the warrant execution team, including members of the Defendants, KINGS DA and the NYS DEC, their employees, agents and/or members should have known that any individual who is the subject of a search and/or seizure may flee, attack or may resist with physical violence directed at either the search execution team, members of the public or at him or herself.

49. That on or about February 24, 2015 in the course of an execution of the aforementioned improperly obtained warrant, the warrant execution team, including members of the Defendants, KINGS DA and the NYS DEC, their employees, agents and/or members primary goal prior to the execution of a warrant was and is to ensure the safety of the warrant execution team and members of the public which would include the decedent herein notwithstanding the fact that he was the subject of the investigation.

50. That on or about February 24, 2015 in the course of an execution of the aforementioned improperly obtained warrant, the warrant execution team, including

members of the Defendants, KINGS DA and the NYS DEC, their employees, agents and/or members owed a higher duty of care with respect to observing, securing and disarming the decedent claimant in light of the fact that he was the subject of the investigation.

51. That on or about February 24, 2015 in the course of an execution of the aforementioned improperly obtained warrant, Defendants are responsible for decedent having the ability to take his own life by gunshot wound. The act of the decedent in taking his own life with a licensed concealed weapon was foreseeable and should have been anticipated as a potential consequence of the search.

52. That on or about February 24, 2015, upon conducting the search pursuant to the aforementioned warrant which was obtained under false pretenses, the decedent became full of panic, became agitated, stressed, upset and nervous, all of which are expected reactions to the circumstances herein.

53. That on or about February 24, 2015, upon the warrant execution team's overstepping and exceeding the boundaries of the aforementioned warrant itself, the decedent became full of panic, became agitated, stressed, upset and nervous, all of which are expected reactions to the circumstances herein.

54. That on or about February 24, 2015, upon the warrant execution team's failure to conduct a rudimentary search of the decedent was armed, the decedent was able to take his own life by gunshot wound.

55. That on or about February 24, 2015, upon the warrant execution team's failure to inquire whether or not the decedent was armed, the decedent was able to take his own life by gunshot wound.

56. That on or about February 24, 2015, upon the warrant execution team's failure to disarm the decedent, the decedent was able to take his own life by gunshot wound.

57. That on or about February 24, 2015, upon the warrant execution team's failure to observe the changes in behavior of the decedent, the decedent was able to take his own life by gunshot wound.

58. That on or about February 24, 2015, due to the recklessness, carelessness and negligence of the Defendants' by leaving the decedent without supervision, the decedent was able to take his own life by gunshot wound.

59. That on or before February 24, 2015, Defendants for themselves and through their agents, employees, servants, managers, etc., were negligent, careless and reckless in securing a search warrant under false pretenses which ultimately led to the death of decedent by self-inflicted gunshot wound.

60. That on or before February 24, 2015, Defendants for themselves and through their agents, employees, servants, managers, etc., were negligent, careless and reckless in failing to conduct a proper pre-execution weapon search, which ultimately led to the death of decedent by self-inflicted gunshot wound.

61. That on or before February 24, 2015, Defendants for themselves and through their agents, employees, servants, managers, etc., were negligent, careless and reckless in failing to properly disarm the decedent which ultimately led to the death of decedent by self-inflicted gunshot wound.

62. That on or before February 24, 2015, Defendants for themselves and through their agents, employees, servants, managers, etc., were negligent, careless

and reckless in failing to properly supervise the decedent which ultimately led to the death of decedent by self-inflicted gunshot wound.

63. That on or before February 24, 2015, Defendants, for themselves and through their agents, employees, servants, managers, etc., were negligent, careless and reckless in failing to secure the decedent which ultimately led to the death of decedent by self-inflicted gunshot wound.

64. That on or before February 24, 2015, Defendants, for themselves and through their agents, employees, servants, managers, etc., were negligent, careless and reckless in failing to protect the decedent which ultimately led to the death of decedent by self-inflicted gunshot wound.

65. That the municipal and law enforcement agency Defendants directly and proximately caused the harms suffered by ARTHUR MONDELLA in addition to the harms caused by the individual JOHN DOE LAW ENFORCEMENT OFFICERS 1-100 because the harms suffered by ARTHUR MONDELLA are part and parcel to customs, policies and practices advanced by the CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT.

66. That in addition to the violations of ARTHUR MONDELLA's constitutional rights, Defendants' pretextual environmental warrant is part of a law enforcement policy or custom to fool members of the judiciary into issuing warrants not based upon probable cause and this ruse caused the illegal and unconstitutional joint law enforcement raid that led to ARTHUR MONDELLA's death.

67. That in addition to the violations of ARTHUR MONDELLA's constitutional rights, Defendants' "cowboy" and "cavalier" execution of the warrant and failure to

inquire about the status of any legal permit to carry concealed weapons on the part of ARTHUR MONDELLA is part of a law enforcement policy or custom to enter premises to be searched with "guns blazing" style and with disregard for properly established procedures and this "cowboy" and "cavalier" execution of the warrant "guns blazing" style and with disregard for properly established procedures caused the illegal and unconstitutional joint law enforcement raid that led to ARTHUR MONDELLA's death. <u>When the cops choose to play "Cowboys and Indians", the NYPD must he held responsible when the Indians are needlessly killed.</u>

      **WHEREFORE**, plaintiff respectfully prays judgment as follows:

      (a)    For compensatory damages against all Defendants in an amount to be proven at trial;

      (b)    For exemplary and punitive damages against all Defendants in an amount to be proven at trial;

      (c)    For costs of suit herein, including Plaintiffs' reasonable attorney's fees; and;

      (d)    For such other and further relief as the court deems proper.

## SECOND CLAIM ON BEHALF OF ALL PLAINTIFFS

## RECKLESSNESS

68. The Plaintiffs repeat, reiterate and reallege each and every paragraph above as if fully stated herein and further state as follows.

69. That on or before February 24, 2015, Defendants for themselves and through their agents, employees, servants, managers, etc., were negligent, grossly negligent, careless and reckless in discharging their obligations which ultimately led to the death of decedent, ARTHUR MONDELLA, by self-inflicted gunshot wound.

**WHEREFORE**, plaintiff respectfully prays judgment as follows:

  (a) For compensatory damages against all Defendants in an amount to be proven at trial;

  (b) For exemplary and punitive damages against all Defendants in an amount to be proven at trial;

  (c) For costs of suit herein, including Plaintiffs' reasonable attorney's fees; and;

  (d) For such other and further relief as the court deems proper.


## THIRD CLAIM ON BEHALF OF ALL PLAINTIFFS

## NEGLIGENCE

70. The Plaintiffs repeat, reiterate and reallege each and every paragraph above as if fully stated herein and further state as follows.

71. That on or before February 24, 2015, Defendants for themselves and through their agents, employees, servants, managers, etc., were negligent, grossly

negligent, careless and reckless in discharging their obligations which ultimately led to the death of decedent, ARTHUR MONDELLA, by self-inflicted gunshot wound.

**WHEREFORE**, plaintiff respectfully prays judgment as follows:

(a) For compensatory damages against all Defendants in an amount to be proven at trial;

(b) For exemplary and punitive damages against all Defendants in an amount to be proven at trial;

(c) For costs of suit herein, including Plaintiffs' reasonable attorney's fees; and;

(d) For such other and further relief as the court deems proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

/S/ RICHARD A. LUTHMANN

Dated: May 23, 2016
   Staten Island, New York

By: RICHARD A. LUTHMANN
LUTHMANN LAW FIRM PLLC
Attorney for Plaintiffs
Office and Post Office Address
1811 Victory Boulevard
Staten Island, New York 10314
(718) 447-0003
rluthmann@luthmannfirm.com